852 F.2d 93
 15 Media L. Rep. 1756
 Don BAILEY, Nick J. Ficco, Jr., Rudy M. Grubesky, James M.
Shannon, Robert J. Yanuzzi, Robert E. Frederick,
Timothy Baker, Anthony Marceca, and Ben
Livingood, Petitioners in 88-5091,
v.
SYSTEMS INNOVATION, INC., Bryon D. Lesjack, Maurice G.
Dutton, Ph.D., and Michael H. Dugan, Milan Sudor
and Richard Guth, Respondents,
and
The Honorable Sylvia H. Rambo, Judge of the United States
District Court for the Middle District of
Pennsylvania, Nominal Respondent.
SYSTEMS INNOVATION, INC., Bryon D. Lesjack, Maurice G.
Dutton, Ph.D. and Michael H. Dugan,
v.
Don BAILEY; Nick J. Ficco, Jr.; Rudy M. Grubesky; James
M. Shannon; Robert J. Yanuzzi; Robert E. Frederick;
Timothy Baker; Anthony Marceca; Ben Livingood; Milan
Sudor and Richard Guth, Don Bailey; Nick J. Ficco, Jr.;
Rudy M. Grubesky; James M. Shannon; Robert J. Yanuzzi;
Robert E. Frederick; Timothy Baker; Anthony Marceca; Ben
Livingood, Appellants in 88-5113.
 Nos. 88-5091, 88-5113.
 United States Court of Appeals,
Third Circuit.
 Argued May 6, 1988.
Decided July 21, 1988.
 
 James L. McAneny (argued), Com. of Pa., Dept. of Auditor General, Harrisburg, Pa., for petitioners/appellants.
 James J. Kutz (argued), Shearer, Mette, Evans & Woodside, Harrisburg, Pa., for appellee.
 Before HIGGINBOTHAM, STAPLETON and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, JR., Circuit Judge.
 
 
 1
 An official and various employees of the Commonwealth of Pennsylvania, and two individuals, who are defendants in a pending civil action, claim that their first amendment rights to freedom of speech are violated by a district court order that imposes upon them the requirements of Middle District of Pennsylvania Local Rule 118.7 ("Rule 118.7"), governing "Extrajudicial Statements by Attorneys in Civil Cases". They have filed both a petition for writ of mandamus and an interlocutory appeal from the district court's order that applies the rule to these defendants and denies plaintiff-appellee's motion for a temporary restraining order.
 
 
 2
 We hold that the district court order is appealable under 28 U.S.C. Sec. 1292(a)(1). The appeal constitutes "other adequate means to attain the relief ... desire[d]," Kerr v. United States District Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976), and accordingly, the petition for writ of mandamus will be denied. We further hold that the provisions of Rule 118.7 as applied to the litigants in this civil suit violate their rights to freedom of speech. We will therefore vacate in part the order of the district court insofar as it imposes that rule on the litigants and remand the matter for further proceedings.
 
 I.
 
 3
 Neither party disputes the relevant facts. Systems Innovation, Inc. ("SII") is a Pennsylvania corporation that markets and services various types of law enforcement products, including speed timing devices and chemical breath-test equipment. It also repairs, services and certifies the accuracy of these devices for its customers, which are largely municipal law enforcement agencies.
 
 
 4
 The Auditor General of the Commonwealth of Pennsylvania, various employees of his Department, and two private individuals ("Commonwealth litigants") are defendants in a civil suit brought by SII and its principal officers. The lawsuit stems from two press conferences the Auditor General held in December 1987 and January 1988 in which he announced the results of his office's investigations into SII's performance under state and local government contracts. Appendix at Exhibits C & D. At these conferences, the Auditor General recommended that all contracts awarded to SII be reviewed, and announced that the Pennsylvania Attorney General would be conducting an investigation into the company. Id. He also issued press releases concerning the breath test equipment. Id. at Exhibit E. Copies of these releases were subsequently widely distributed to SII's customers.
 
 
 5
 On January 25, 1988, SII filed a complaint in federal district court for the Middle District of Pennsylvania,[1] and simultaneously filed motions for a temporary restraining order ("TRO") and for a preliminary injunction. Appendix at 116-38; 141-48. Both the TRO motion and the motion for preliminary injunction sought to prevent the Commonwealth litigants from
 
 
 6
 (a) communicating, directly or indirectly, with customers or potential customers of plaintiffs, (b) holding additional press conferences or issuing additional press releases on the matters which have already been referred to the Office of Attorney General, and (c) investigating further SII and/or its offices for criminal wrongdoing.
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 Id. at 139-40, 146-47. Following a hearing, the district court denied the TRO motion on January 28, 1988. The district court's opinion addressed the testimony of SII's president that subsequent to the press conferences and releases, sales had declined, negative press in trade journals had appeared, bids were being deferred and some contracts had been cancelled. Id. at 167, 169. Nevertheless, the district court, citing ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987), found that this testimony did not sufficiently establish "irreparable harm" to justify granting injunctive relief. Appendix at 169.
 
 The district court concluded that
 
 10
 Rule 118.7 of the Rules of Court for the United States District Court for the Middle District of Pennsylvania, which this court will make applicable to the litigants as well as the attorneys, will sufficiently protect the plaintiffs so that the more drastic remedy of injunctive relief will not be required.
 
 
 11
 Appendix at 169. Although the district court opinion appeared to refer to both the request for TRO and the request for a preliminary injunction, its accompanying order simply denied the TRO motion and imposed Rule 118.7 "upon the litigants of this case as well as counsel."[2] Id. at 164. On the same day that the district court issued its order, SII moved to withdraw the motion for preliminary injunction. Id. at 170. The district court granted the motion. Id. at 174.
 
 
 12
 On February 5, 1988, the Commonwealth litigants filed a petition for writ of mandamus in this Court and a notice of appeal. They request this Court to issue a writ of mandamus directing the district court to vacate that part of its order imposing Rule 118.7 upon the Commonwealth litigants, or in the alternative, to reverse that part of the order on appeal. We consolidated the petition and the appeal for disposition.
 
 II.
 
 13
 The questions of whether we have mandamus jurisdiction and whether we have jurisdiction to decide this interlocutory appeal are intertwined. We may issue writs of mandamus pursuant to the All Writs Act.[3] 28 U.S.C. Sec. 1651(a) (1982). This Court, as well as others, has invoked mandamus jurisdiction to strike down district court orders that were found to violate the first amendment. See Rodgers v. United States Steel Corp., 536 F.2d 1001, 1006 (3d Cir.1976) ("In our view, the district court's order constitutes a prior restraint on the speech of petitioners' counsel in violation of the First Amendment. A writ of mandamus is therefore appropriate in order to confine the district court to the proper sphere of its lawful power." (footnote omitted)); accord Coles v. Marsh, 560 F.2d 186, 189 (3d Cir.), cert. denied, sub nom. Blue Cross of Western Pennsylvania v. Marsh, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977); CBS v. Young, 522 F.2d 234, 237 (6th Cir.1975) ("our authority to review the order in question [violating the first amendment] by mandamus is unassailable."). These decisions, however, do not indicate that we should automatically find such jurisdiction here. The exercise of our mandamus power is limited to situations in which
 
 
 14
 the party seeking issuance of the writ ha[s] no other adequate means to attain the relief he [or she] desires ... and ... he [or she] satisf[ies] "the burden of showing that his [or her] right to issuance of the writ is 'clear and indisputable.' "
 
 
 15
 Kerr v. United States District Court, 426 U.S. at 403, 96 S.Ct. at 2124 (citations omitted); DeMasi v. Weiss, 669 F.2d 114, 117 (3d Cir.1982). Because we find that we have appellate jurisdiction to review the district court order, mandamus review is unnecessary. "[W]hile a function of mandamus in aid of appellate jurisdiction is to remove obstacles to appeal, it may not appropriately be used merely as a substitute for the appeal procedure prescribed by ... statute." Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943).
 
 
 16
 The Commonwealth litigants contend that in the alternative to mandamus jurisdiction, we have appellate jurisdiction pursuant to 28 U.S.C. Sec. 1292(a)(1).[4] To the extent that we interpret the district court's order as one simply denying a motion for TRO, it is unappealable under this provision. See Office of Personnel Management v. American Federation of Government Employees, AFL-CIO, 473 U.S. 1301, 1303-05, 105 S.Ct. 3467, 3468-69, 87 L.Ed.2d 603 (1985); United States v. Crusco, 464 F.2d 1060, 1062 (3d Cir.1972); Richardson v. Kennedy, 418 F.2d 235 (3d Cir.1969). In that regard, we note that the district court allowed SSI to withdraw its motion for preliminary injunctive relief. It thus appears that no injunction is before us. Nevertheless, in our analysis of our appellate jurisdiction pursuant to 28 U.S.C. Sec. 1292(a)(1), we are not constrained by the district court's characterization of its order. See generally New Jersey State Nurses Ass'n v. Treacy, 834 F.2d 67, 69-70 (3d Cir.1987) ("certain orders not explicitly styled as injunctions may have injunctive effect."). As well as denying the TRO motion, the district court's order imposed the provisions of Rule 118.7 on the Commonwealth litigants (as well as on their attorneys). These provisions are essentially, if not explicitly, injunctive.
 
 Rule 118.7 provides:
 
 17
 A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is reasonable likelihood that such dissemination will interfere with a fair trial and which relates to:
 
 
 18
 (a) Evidence regarding the occurrence or transaction involved.
 
 
 19
 (b) The character, credibility, or criminal record of a party, witness or prospective witness.
 
 
 20
 (c) The performance or results of any examinations or tests or the refusal or failure of a party to submit to such.
 
 
 21
 (d) His opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.
 
 
 22
 (e) Any other matter reasonably likely to interfere with a fair trial of the action.
 
 
 23
 (f) Any reference to the amount demanded, offered or involved.
 
 
 24
 M.D.Pa.R. 118.7 (emphasis added). In our view, the district court's imposition of this rule on the Commonwealth litigants effectively imposed upon them the preliminary injunction that SSI had originally requested. Although not styled as an injunction, it prohibits any of the Commonwealth litigants from discussing nearly every aspect of the case with SSI customers or with the press. Indeed, the imposition of this rule arguably results in greater relief than SSI had requested in its motions for TRO and preliminary injunction, for it could be interpreted to prohibit discussion between the Auditor General and the Attorney General, or even within the Auditor General's Department itself, if such discussion might "be disseminated by means of public communication." Id. The district court itself noted that Rule 118.7 was to be imposed in lieu of an injunction. Appendix at 169.
 
 
 25
 We construe the district court order as one granting a preliminary injunction, and we hold, therefore, that we have appellate jurisdiction over the district court order pursuant to 28 U.S.C. Sec. 1292(a)(1).
 
 III.
 
 26
 This is not the first time a court has been confronted with a first amendment challenge to a court order that prohibits extrajudicial statements by the parties involved in a lawsuit. At the outset, we note that the question before us is limited. The Commonwealth litigants do not ask us to invalidate Rule 118.7. Nor do they question its application to their counsel. Moreover, we are not faced with a challenge to the court order by a member of the press, claiming the right to publish specific aspects of the litigation. We are asked here only to review the constitutionality of the rule as applied to the litigants in this civil suit.
 
 
 27
 The first amendment to the Constitution provides that "Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S. CONST. amend. I. Rule 118.7 is certainly subject to first amendment scrutiny, and the fact that it is a rule promulgated by the district court does not exempt this Court from so inquiring. See Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 844, 98 S.Ct. 1535, 1544, 56 L.Ed.2d 1 (1978); see also Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 635, 44 S.Ct. 220, 222, 68 L.Ed. 480 (1924) ("no rule of court can ... abrogate or modify the substantive law."). We are thus presented with the question of whether Rule 118.7 "abrogate[s] or modif[ies]", Washington-Southern Navigation Co., 263 U.S. at 635, 44 S.Ct. at 222, the substantive concerns embodied in the first amendment.
 
 
 28
 Rule 118.7 is an example of the various rules adopted by courts and state bars in response to the specific problem of prejudicial pretrial publicity in criminal trials. Based in part on guidelines recommended by the American Bar Association and other entities,[5] these rules attempt to reconcile the conflicts between the first amendment rights to freedom of speech and of the press, and the sixth amendment guarantee that an "accused shall enjoy the right to a ... trial, by an impartial jury." U.S. CONST. amend. VI. These conflicts are well-documented in a number of cases that have arisen from "sensational" or otherwise controversial criminal trials. See, e.g., Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); Pennekamp v. Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941); Chase v. Robson, 435 F.2d 1059 (7th Cir.1970); United States v. Tijerina, 412 F.2d 661 (10th Cir.), cert. denied, 396 U.S. 990, 90 S.Ct. 478, 24 L.Ed.2d 452 (1969); United States v. Simon, 664 F.Supp. 780 (S.D.N.Y.1987).
 
 
 29
 The sixth amendment, by its terms, is applicable only to criminal actions, but "the right to trial by jury [is] preserved," U.S. CONST. amend VII, in civil cases by the seventh amendment. The Supreme Court has recognized that conflict between freedom of speech and the right to a fair trial is no less troubling in the non-criminal context. See, e.g., Landmark Communications, Inc., 435 U.S. 829, 98 S.Ct. 1535 (judicial disciplinary proceeding); Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947) (civil case involving a forcible detainer); cf. CBS Inc. v. Young, 522 F.2d 234 (6th Cir.1975) (civil suit arising out of Kent State deaths). These cases make abundantly clear that fairness in a jury trial, whether criminal or civil in nature, is a vital constitutional right. See Nebraska Press Ass'n, 427 U.S. at 586, 96 S.Ct. at 2815 (Brennan, J., concurring) ("So basic to our jurisprudence is the right to a fair trial that it has been called 'the most fundamental of all freedoms.' ") (quoting Estes v. Texas, 381 U.S. 532, 540, 85 S.Ct. 1628, 1632, 14 L.Ed.2d 543 (1965)).
 
 
 30
 Some courts have employed a hierarchical type of analysis, suggesting that criminal trials are subject to greater fair trial concerns than civil trials. See Chicago Council of Lawyers v. Bauer, 522 F.2d 242, 257-58 (7th Cir.1975), cert. denied, sub nom. Cunningham v. Chicago Council of Lawyers, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976); Hirschkop v. Snead, 594 F.2d 356 (4th Cir.1979) (en banc ).[6] The Supreme Court, however, has declined to assign a priority between first amendment and sixth amendment rights. Nebraska Press Ass'n, 427 U.S. at 561, 96 S.Ct. at 2803.[7] Similarly, first amendment analysis does not vary in response to the competing seventh amendment purpose. As in any case, we must decide here whether "the gravity of the 'evil,' discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger." Id. at 562, 96 S.Ct. at 2804 (quoting United States v. Dennis, 183 F.2d 201, 212 (2d Cir.1950) (Hand, L., J.), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951)); accord Procunier v. Martinez, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974) ("the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.").
 
 
 31
 Moreover, this order is a prior restraint on speech, that carries with it " 'a heavy presumption against its constitutional validity.' " New York Times Co. v. United States, 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971) (citations omitted); accord Rodgers, 536 F.2d at 1007 ("Prior restraints on freedom of speech have long been disfavored in Anglo-American law."); CBS v. Young, 522 F.2d at 238 ("prior direct restraints by government upon First Amendment freedoms of expression and speech must be subjected by the courts to the closest scrutiny."). Prior restraints are the most drastic, but not necessarily the most effective, judicial tool for enforcing the right to a fair trial. Nebraska Press Ass'n, 427 U.S. at 572-73, 96 S.Ct. at 2809 (Brennan, J., concurring). If any method other than a prior restraint can effectively be employed to further the governmental or private interest threatened here, then the order is invalid.
 
 
 32
 In order to evaluate whether the district court's decision to impose Rule 118.7 upon the litigants in this case was justified, we must examine the record and consider, inter alia
 
 
 33
 (a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger. The precise terms of the restraining order are also important. We must then consider whether the record supports the entry of a prior restraint on publication [or speech], one of the most extraordinary remedies known to our jurisprudence.
 
 
 34
 Nebraska Press Ass'n., 427 U.S. at 562, 96 S.Ct. at 2804. The district court did not make specific factual findings supporting its decision to impose the rule upon the Commonwealth litigants although such findings are essential to any order restricting speech. See Landmark Communications Inc., 435 U.S. at 842-43, 98 S.Ct. at 1543 ("Properly applied, the [first amendment] test requires a court to make its own inquiry into the imminence and magnitude of the danger said to flow from the particular utterance and then to balance the character of the evil, as well as its likelihood against the need for free and unfettered expression."); Craig, 331 U.S. at 373, 67 S.Ct. at 1253 ("In a case where it is asserted that a person has been deprived by a ... court of a fundamental right secured by the Constitution, an independent examination of the facts by this Court is often required to be made."); accord Chase, 435 F.2d at 1061; Coles, 560 F.2d at 189. Nevertheless, even devoid of specific findings, the record here convinces us that the first amendment is violated by the district court's order.
 
 
 35
 Application of the Nebraska Press Ass'n analysis also requires making the presumption that SII is primarily interested in securing a fair trial. The record here suggests, to the contrary, that underlying SII's request for TRO and preliminary injunctive relief was concern over the negative impact of the Auditor General's press contacts upon SII's business. Appendix at 151-62. Although SII's concern could conceivably be framed as a fourteenth amendment consideration, neither the district court nor the parties so characterized it. We are certain that even a genuine economic threat posed to a business by public officials who question the quality of commercial products does not carry the heightened status that the right to a fair trial carries. If we assume that the desire to ensure a fair trial motivated the district court's imposition of Rule 118.7, and if under this assumption the prior restraint fails first amendment scrutiny, then a fortiori it must fail first amendment scrutiny under the assumption that the district court was attempting to protect SII's business interests.
 
 A.
 
 36
 Under Nebraska Press Ass'n, we first consider the "nature and extent of pretrial news coverage." 472 U.S. at 562, 96 S.Ct. at 2804. The parties do not dispute that the extent of the pretrial publicity thus far has been the two press conferences held by, and press releases distributed by, the Auditor General. Assuming arguendo that the Auditor General would have held further press conferences and disseminated more releases in the absence of the order, we do not see such massive prejudicial publicity as would threaten SII's right to a fair trial. This is self-evident by comparison to other cases. Where an elected sheriff issued a press statement accusing a county judge of political intimidation in pending grand jury proceedings, the Supreme Court did not find a "clear and present danger to the administration of justice." Wood, 370 U.S. at 388, 82 S.Ct. at 1372. The Auditor General of the Commonwealth of Pennsylvania is an elected official with perhaps greater power to influence public opinion than possessed by the sheriff in Wood. We recognize that careless or deliberately false remarks by a public official have the potential to disrupt a civil suit in which he or she is a participant, as well as to deprive the targets of these remarks of their economic livelihood. This potential problem, however, is outweighed by other considerations. Wood teaches us that a public official has the right and, we add, sometimes the duty, to address issues of public concern within his or her domain. While often these concerns are the focus of a civil trial, the public official's ability and resources to command press conferences and issue press releases that could potentially interfere with a fair trial do not justify imposing restrictions on that official's speech unless there is a clear threat to the seventh amendment right. The district court's denial of the motion for TRO because SSI did not show the requisite "irreparable harm" undercuts any argument that the imposition of a prior restraint on speech, motivated by seventh amendment concerns, is justified here.[8]
 
 
 37
 Comparison of this case to other cases further convinces us that no prior restraint is justified on the facts presented here. In the early press cases, the Supreme Court found that even deliberately slanted articles and editorials did not pose a threat to the administration of justice. For example, where a newspaper published articles that "did not reflect good reporting," in that "they failed to reveal the precise issue" in a state trial, Craig, 331 U.S. at 374, 67 S.Ct. at 1254, the Court found no "threat to the administration of justice." Id. at 376, 67 S.Ct. at 1255. Where newspaper editorials "did not state objectively the attitude of ... judges," Pennekamp, 328 U.S. at 345, 66 S.Ct. at 1036, the Court found insufficient evidence to support a finding of "a clear and present danger to judicial administration." Id. at 347, 66 S.Ct. at 1037. Where a newspaper criticized a trial judge for leniently sentencing two labor union members who had been convicted of assault, and published two articles on public figures after they had been convicted but before they had been sentenced, Bridges, 314 U.S. at 271-74, 62 S.Ct. at 197-200, the Court found the publications' "possible influence on the course of justice ... [to] be ... negligible." Id. at 274, 62 S.Ct. at 200. We have reviewed the Auditor General's press statements and releases. Appendix at Exhibits C, E. Even if the statements here contain misleading information, they are not more egregious than the articles in the aforementioned cases and, by analogy, will not interfere with SII's ability to secure a fair trial.
 
 B.
 
 38
 We next consider "whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity". Nebraska Press Ass'n, 427 U.S. at 562, 96 S.Ct. at 2804. Here we simply note that the district court ignored a number of alternatives to the imposition of Rule 118.7 upon the parties that might remedy any pretrial prejudice. It did not, for example, consider a possible change of venue, postponement of the trial, careful voir dire of prospective jurors, or emphatic jury instructions. See id. at 563-65, 96 S.Ct at 2804-06. It merely imposed the most draconian remedy possible--a direct prior restraint.
 
 C.
 
 39
 Finally, we consider the "probable efficacy of [the] prior restraint ... as a workable method" of mitigating any danger to SII's fair trial right. Nebraska Press Ass'n, 427 U.S. at 565, 96 S.Ct. at 2806. Again, the district court made no findings in this regard. While the imposition of a "gag order" on the Commonwealth litigants will certainly accomplish the objective of preventing them from releasing further adverse publicity regarding SII, the question whether it is a "workable method" of accomplishing that objective is irrelevant since the district court did not first consider other less intrusive measures to protect the seventh amendment right.
 
 IV.
 
 40
 We conclude that Middle District of Pennsylvania Rule 118.7 cannot apply to the Commonwealth litigants in this case without violating their first amendment rights to freedom of speech. Public officials in their public capacity must certainly be allowed to exercise fully this right, for it is undisputed that those who drafted the Bill of Rights were motivated in large part by "the need for freedom of expression in the political arena." Nebraska Press Ass'n, 427 U.S. at 547, 96 S.Ct. at 2797. We do not trivialize the danger posed by officials who might exercise this right irresponsibly, and who may unfairly or unlawfully inflict a state's considerable clout upon unwitting and undeserving individuals. Nevertheless, we do not believe that the facts of this case even begin to approach the justification needed to curtail the Commonwealth litigants' right to freedom of speech. Even if we assume that the district court's order was imposed in order to secure SII's right to a fair trial rather than to protect its business interests, we cannot endorse the prior restrictions on speech imposed upon the litigants by the district court in this case.[9]
 
 
 41
 For the foregoing reasons, we will deny the petition for writ of mandamus, vacate the district court's order insofar as it imposes Rule 118.7 upon the litigants and remand this matter for further proceedings consistent with this opinion.
 
 
 
 [1]
 This complaint enumerated various causes of action: civil rights violations, conspiracy, defamation, libel, slander, trade libel, interference with contractual relations, interference with prospective economic advantage, disparagement, injurious falsehood, breach of privacy, false light, intentional infliction of emotional distress and civil conspiracy. Appendix at 3-115
 
 
 [2]
 The district court noted that the imposition of Rule 118.7 was "authorized pursuant to Local Rule 121." Appendix at 164. Rule 121 provides:
 In a case which is or is likely to be widely publicized, the court, on motion of either party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of the accused to a fair trial by an impartial jury, the seating and conduct in the courtroom of spectators and news media representatives, the management and sequestration of jurors and witnesses, and any other matters which the court may deem appropriate for inclusion in such an order.
 M.D.Pa.R. 121.
 
 
 [3]
 This statute provides:
 The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
 28 U.S.C. Sec. 1651(a) (1982).
 
 
 [4]
 Section 1292(a)(1) provides: "the courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory orders of the district courts of the United States ... granting ... injunctions...."
 28 U.S.C. Sec. 1292(a)(1) (1982).
 
 
 [5]
 See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 550, 96 S.Ct. 2791, 2798, 49 L.Ed.2d 683 (1976) (discussing, inter alia, American Bar Association Legal Advisory Committee on Fair Trial and Free Press, The Rights of Fair Trial and Free Press (1969); American Bar Association Project on Standards for Criminal Justice, Fair Trial and Free Press (Approved Draft 1968); Report of the Judicial Conference Committee on the Operation of the Jury System, "Free Press-Fair Trial" Issue, 45 F.R.D. 391 (1968))
 
 
 [6]
 The Bauer court stated
 although we rightfully place a prime value on providing a system of impartial justice to settle civil disputes, we require even a greater insularity against the possibility of interference with fairness in criminal cases. Perhaps this is symbolically reflected in the Sixth Amendment's requirement of an 'impartial jury' in criminal cases whereas the Seventh Amendment guarantees only 'trial by jury' in civil cases. The point to be made is that the mere invocation of the phrase 'fair trial' does not as readily justify a restriction on speech when we are referring to civil trials.
 522 F.2d at 257-58.
 In Hirschkop, Judge Widener dissented from the en banc court's decision to invalidate as overbroad the Virginia Rule prohibiting extrajudicial comment in civil cases. 594 F.2d at 381-83. He noted that "[s]ince precisely the same things have to be done to protect civil and criminal jury trials," id. at 382, no reason existed for the court to uphold a rule as applied to criminal jury trials while simultaneously striking down a rule as applied to civil cases. He concluded that
 the analysis which must have been made with respect to civil cases is that the value of the public interest in protecting the integrity of a criminal trial is greater than the value of the public interest in protecting the integrity of a civil trial, and that the court has adjudged that the right of the attorney to exercise free speech is greater than the value of protecting the integrity of a civil jury trial, even to the point of its disruption, while the same is not true in the similar criminal proceeding because of the greater public interest in protecting its integrity. I cannot agree.
 Id. at 382-83.
 
 
 [7]
 The Supreme Court has specifically stated that
 if the authors of these guarantees, fully aware of the potential conflicts between them, were unwilling or unable to resolve the issue by assigning to one priority over the other, it is not for us to rewrite the Constitution by undertaking what they declined to do.
 Nebraska Press Ass'n, 427 U.S. at 561, 96 S.Ct. at 2804. See also id. at 587-88, 96 S.Ct. at 2816 (Brennan, J., concurring).
 
 
 [8]
 Although the district court did not make specific findings of fact, we note that the extent of the potential pretrial publicity in this case is certainly mitigated by the significant population of the Middle District, from which it should be possible to draw jurors who have not heard of, or would not be influenced by, the Auditor General's remarks. The fact that the Auditor General's information is probably of interest only to a rather discrete subset of that population, e.g., law enforcement officials, criminal attorneys and (possibly) driving offenders, further supports this conclusion
 
 
 [9]
 Two other courts of appeals have struck down rules identical to the one before us. See Hirschkop, 594 F.2d at 373; Bauer, 522 F.2d at 257-59. This particular "case or controversy" involves only the application of Rule 118.7 to the Commonwealth litigants in this case, and thus we do not reach the question of whether Rule 118.7 is vague or overbroad