ROSENN,
Circuit Judge, dissenting.
Because 'the substance of the published reprimand and the circumstances attending its declaration by the court give it all of the characteristics of an order imposing a sanction, I would allow the appeal. I therefore respectfully dissent.
I.
In order to understand that the published chastisement and censure of government counsel was substantially more than an ordinary finding of fact, some additional background may be helpful. Lawrence G. Williams filed a complaint in 1991 in an adversary action against the United States in a bankruptcy proceeding he had initiated the preceding year. The purpose of the complaint, among other things, was to determine the amount and dischargeability of his outstanding federal income tax liability. Beginning in the late 1970s, Williams invested in a group of tax shelters known as the Arbitrage Management Partnerships (“the partnerships”). Williams made numerous deductions on his federal income tax returns related to his investments in these partnerships. The partnerships ultimately failed. During the bankruptcy proceeding, the United States filed proofs of claim ultimately seeking $6.5 million in unpaid federal taxes which resulted from the disallowance of many of the deductions claimed by Williams.
*94 Subsequent to the partnerships’ failure, the Internal Revenue Service (IRS) sought to audit the partnerships and the partnerships’ individual investors. Because of the thousands of individuals and entities involved in the partnerships, a lawsuit was filed and the United States Tax Court supervised an attempt to resolve all of the tax deficiencies on a consolidated basis. The court subsequently was advised that a tentative settlement had been reached. In February 1989, the IRS wrote Williams advising him of the terms of the proposed settlement and of the procedures he had to follow if he wished to accept it. In the instant adversary action in the bankruptcy court, Williams claimed that he had accepted the IRS’s offer of settlement. He argued that, because of his acceptance of the offer, his tax liability was substantially reduced from the amount claimed by the United States in its proofs of claim.
Following the filing of the adversary action, the Government and Williams engaged in discovery. Pursuant to Federal Rule of Civil Procedure 34(a), Williams served a formal request for production of numerous documents on the United States for the period commencing 1978 to the date of his request. On April 10,1992, Williams filed a motion for partial summary judgment asserting that the United States had not only failed to produce all of the documents relating to the extension of the statute of limitations, but also failed to produce files and documents relating to the IRS audits of the partnerships (“the partnership audit files”). The bankruptcy court denied the motion.
Based on the same grounds, pursuant to Federal Rule of Civil Procedure 37(b)(2),[8] Williams moved to preclude the Government from introducing certain documents at trial. In its response, the United States argued that it had provided all of the documents in its possession relating to the statute of limitations and did not produce the partnership audit files because Williams had never formally requested them. Subsequently, the parties informed the bankruptcy court that they would attempt to reach a settlement in the adversary action. Accordingly, the court did not schedule a hearing on Williams’s preclusion motion until January 1995, after the talks apparently broke down.
II.
Significantly, for the purpose of the matter presently before us on this appeal, the proposed prehearing orders submitted to the Bankruptcy Court by both Williams and the Government identified the ultimate issue as
[w]hether the appropriate sanction [to] be imposed against the Government under the circumstances, should be the striking of the Government’s pleadings and the entry of judgment [by default] in favor of the plaintiff and against the Government, or some other sanction pursuant to Rule 37(b) of the Federal Rules of Civil Procedure.
Williams did not request any sanctions against either Cannon or Blagg personally.[9] Thus, a major purpose of the hearing was the imposition of sanctions. Indeed, the Bankruptcy Court, in its published opinion following the hearing, identified its decision in part, as “GRANTING PARTIAL RELIEF ON DEBTOR’S REQUEST FOR SANCTIONS AGAINST THE INTERNAL REVENUE SERVICE.” (Upper case in original). The court denied Williams’ motion for preclusion but sanctioned the Government, Cannon, and Blagg pursuant to Rule 37(b) for failure to produce the partnership audit files and the settlement payments. The court made numerous anecdotal findings of fact in support *95 of the sanctions and also made the following specific findings:
1) We find that throughout the long pen-dency of this adversary proceeding the Defendant [the Government] has repeatedly and deliberately violated Rule 37(b).
2) We also find and conclude that the IRS’s failure to comply with outstanding discovery orders was not substantially justified; that there are no other circumstances that would make an award of expenses unjust, and that sanctions are definitely in order. The only real issue is the amount and/or kind of sanctions that are appropriate, on the facts before us. (emphasis added)
3) In addition, we find that its actions were specifically calculated to impede Plaintiffs attempts to obtain discovery material to which it was clearly entitled.
See In re Williams, 181 B.R. 1 (Bankr.D.R.I.), vacated in part on reconsideration, 188 B.R. 721 (Bankr.D.R.I.1995), aff'd in part and vacated in part, 215 B.R. 289 (D.R.I.1997). As to Blagg, the court made the following statement: “We find Mr. Blagg’s conduct to be intentional, unprofessional, and unjustified” and it referred to certain of his testimony as “pure baloney.” 181 B.R. at 3. It also declared Cannon’s “performance and credibility at about the same level as [Blagg].” The court also ordered Cannon and Blagg each to pay $750 fines to the court.
Following a motion of the Government for reconsideration or amendment of the opinion of April 14, 1995, the bankruptcy court, in an opinion dated October 24, 1995, agreed that several corrections and amendments to its original opinion were in order, including vacating the monetary sanction against Blagg, recognizing that he “did not file a formal entry of appearance.” The court, however, refused to vacate published statements as to Blagg and Cannon. See In re Williams, 188 B.R. 721.
Blagg, Cannon, and the Government appealed to the United States District Court for the District of Rhode Island. At the time of the appeal, the bankruptcy court’s order was not final within the meaning of 28 U.S.C. § 158(a)(1) because of the pending underlying adversary action. The district court, however, allowed the appeal pursuant to 28 U.S.C. § 158(a)(3), which permits the appeal of interlocutory orders with court permission. See In re Williams, 215 B.R. at 297. The district court agreed that Cannon and Blagg had conducted themselves improperly, but found that they had not violated Rule 37(b) or any other rule because Williams had never formally requested either the partnership audit files or the settlement documents. See 215 B.R. at 301-02. The district court, therefore, vacated the monetary sanction against Cannon, but refused to vacate the bankruptcy court’s published reprimand of counsel. Citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-66, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), the court ruled that the public reprimand was not erroneous under the federal courts’ “inherent power” to sanction misbehaving attorneys.' See 215 B.R. at 303.
III.
The majority dismiss the appeal before us for want of jurisdiction on grounds that the published chastisement of counsel was not contained in an order, judgment, or decree of the court, but amounted only to findings of fact in support of the monetary fines imposed. However, the monetary sanctions against Blagg subsequently were vacated by the bankruptcy court and the findings of fact in support of them served no purpose except to humiliate and punish him. Thus, the chastisement had a vitality and purpose of its own, separate and independent of the monetary sanctions. Similarly, as to Cannon, when the United States District Court ruled that Cannon and Blagg “did not, in fact, violate an order of the district court,” 215 B.R. at 303, it vacated the fine as to Cannon but not the reprimand as to him or as to Blagg. The district court then gave the reprimands an independent status and importance much more significant than an ordinary finding of fact in support of the fines. It regarded the offensive statements as sanctions. Id.
Although the essence of the bankruptcy court’s reprimand to counsel is couched as a *96 finding, it is much more than a basic finding of fact in support of sanctions. The factual findings supporting the sanctions are stated elsewhere in the opinion and specifically refer to counsel’s alleged shortcomings and dereliction with respect to the production of documents and Blagg’s failure to respond to telephone calls.[10] Although the court did not label the reprimand as an order or decree in its opinion, “Granting Partial Relief on Defendant’s Request for Sanction” it stated that Blagg’s conduct “is intentional, unprofessional, and unjustified.” This is not a mere finding of fact but an ultimate statement of censure, intended to punish counsel, a punishment emphasized by its publication. A linguistic reprimand is “[t]o reprove severely.” See Black’s Law Dictionary 1302 (6th ed.1990). Therefore, appending an “order” or “decree” to it may provide a label but adds no operative substance; no action is required from the censuree to make it effective.
Although it is not dispositive to our decision, we note that both the bankruptcy and district courts assumed that the reprimand of Blagg and Cannon constituted sanctions. The bankruptcy court implied by its quotation of United States v. Horn, 29 F.3d 754, 766-67 (1st Cir.1994), that a “public[ ] reprimand” is a proper method of punishing misbehaving lawyers. See 188 B.R. at 730. Similarly, the district court held that it could uphold the “[pjublic [reprimand” of Cannon and Blagg under the federal courts’ inherent power to manage its affairs and discipline the attorneys appearing before it, even though it vacated the fine imposed against Cannon. See 215 B.R. at 302.
In United States v. Santtini, 963 F.2d 585, 590 (3d Cir.1992), the court of appeals concluded that “a district court’s orders lacking the precise label ‘injunction’ may be appeal-able under § 1292(a)(1) if their effect is in-junctive.” It seems to me that a deliberate declaration by a court reprimanding harshly and stridently a lawyer, in a published opinion dealing with sanctions, and conjunctive with an order imposing monetary fines constitutes a sanction, even though the monetary sanctions were subsequently vacated because of error. Indeed, the United States Supreme Court has endorsed the use of a public reprimand in a published opinion as a method of chastising a lawyer in Bank of Nova Scotia v. United States, 487 U.S. 250, 263, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); accord United States v. Hasting, 461 U.S. 499, 506 n. 5, 103 S.Ct. 1974, 76 L.Ed.2d 96 (“The Court also could have publicly chastised the prosecutor by identifying him in its opinion.”).
I am mindful that every pejorative expression or criticism by a court of a lawyer is not subject to appeal. Nor should it be if courts are effectively to function in forums of dispute. For example, a criticism of a lawyer’s performance during trial, when intended to end that lawyer’s duplicative questioning of a witness or introduction of irrelevant evidence, and not intended as a sanction, may not be appealed. Criticism and directions to courts and parties are essential tools of a trial judge to control the litigation in the court. In contrast, a public reprimand of an attorney in a published opinion which is specifically intended as punishment for misconduct stands in a different category; it should be appealable, even though the label of an order is absent. A censure of this sort can be harsh punishment because presumably it will adversely affect a lawyer’s reputation and strongly deter future misconduct because of its sharp and public rebuke. Further, this court and others agree.[11]
According to the majority, vacating the monetary fines, as the bankruptcy court and the district court together did here, deprives this court of jurisdiction. The majority hold that because the monetary sanctions have been vacated, “we lack jurisdiction to consider the propriety of the offending findings.” Maj. op. at 90. The absence of monetary *97 sanctions should in no way adversely affect the appealability of the reprimand. Monetary sanctions only affect one’s bank account; linguistic sanctions can be far more penetrating and damaging. They can pierce the heart and the reputation of the lawyer at whom they are aimed, and, in the long run, probably will strike the lawyer’s bank account as well.
In Walker v. City of Mesquite, 129 F.3d 831 (5th Cir.1997), the United States Court of Appeals for the Fifth Circuit concluded that an attorney may appeal a public reprimand even when no monetary sanctions have been imposed. The court reasoned that an attorney’s professional reputation is “a lawyer’s most important and valuable asset.” Allowing an appeal when an attorney has been fined a nominal amount but denying an appeal from “a finding and declaration by a court that counsel is an unprofessional lawyer” is anomalous. A lawyer may suffer much more because of injury to his reputation caused by a public rebuke than by a fine. Id. at 832. Also, without discussion, the Fifth Circuit permitted an appeal of a reprimand of attorneys which included a finding primarily that they acted in bad faith, but did not impose a monetary sanction. See Dawson v. United States, 68 F.3d 886, 894-95 (5th Cir.1995).
Similarly, the District of Columbia Circuit allowed an appeal by an attorney from a finding by the Court’s disciplinary committee that the attorney engaged in misconduct even though the committee did not impose a monetary penalty. See Sullivan v. Committee on Admissions & Grievances, 395 F.2d 954, 956 (D.C.Cir.1967). The Court rejected the contention that a penalty other than an reprimand was required in order to permit an appeal, likening the disciplined attorney to a criminal defendant that is convicted but whose sentence is suspended. Id. at 956; see also Fromson v. Citiplate, Inc., 886 F.2d 1300, 1304 (Fed.Cir.1989).[12]
The majority is fearful that permitting anything less than a “formal reprimand” to form the predicate for an appeal will invite litigation. Maj. op. at 91. It seems to me that the determining factor should not be the formality of the reprimand but its essential substance. In our analysis of our appellate jurisdiction, “we are not constrained by the district court’s characterization of its order.” See Bailey v. Systems Innovation, Inc., 852 F.2d 93, 96 (3d Cir.1988). Labeling a public reprimand as an order adds nothing significant; the substance is in the content. An attorney who is publicly reprimanded, (i.e., for the purpose of punishing him and deterring others from similar behavior) for misconduct should be entitled to review. Such a reprimand rises above the permissible perimeters of mere criticism. Allowing an appeal in such a situation does not invite litigation of every adverse factual finding or criticism of attorney behavior in the conduct of litigation as the majority suggests. Rather, it merely equates public reprimands with the same jurisdictional rules that are applied to appeals of monetary sanctions.
I also believe that the majority is unduly concerned that appeals from findings will be unopposed. Maj. op. at 91. In this case, as I have already noted, we are not concerned with basic findings of fact but with “a declaration of the court announcing the legal consequences of the facts found.” Black’s Law Dictionary 410 (6th ed.1990) (defining “Decree”). This declaration is, in effect, a “decree” which answers “for most purposes to the judgment of a court of law.” Id. An appeal in such situations is no more unopposed than is an appeal from monetary sanctions. Had the monetary sanctions not been vacated in these proceedings and the appeal allowed, there is nothing that requires or even suggests that the appeal would have been opposed.
The majority also reasons that “policy implications” militate against allowing the appeal. It fears that permitting the appeal would charge an appellate court with enforc- *98 mg an inherently ^indefinable standard of what constitutes an appropriate judicial comment on an attorney’s performance and chill trial judges from speaking and writing candidly. Maj. op. at 91. Considerations of practice and policy lead the majority to conclude that “a jurist’s derogatory comments about a lawyer’s conduct, without more, do not constitute a sanction.” Maj. op. at 92. I believe the majority’s fears are groundless.
What is before us are not mere “derogatory comments.” There is much more. Here, we have a chastisement enhanced by publication. The chastisement was conjoined with monetary fines which were vacated because of legal error. Moreover, the chastisement was not merely derogatory; it was imposed after a three day hearing held primarily for the imposition of sanctions for alleged misbehavior, and which were intended to be punitive. This censure did not amount to mere comments or criticism made during the heat of trial. The court’s declaration was not an ordinary, derogatory comment but a deliberate, written, published reprimand after hearing, intended to punish and deter, followed with monetary fines. In my opinion, this was an unequivocal sanction.
As for the majority’s concern that a trial judge should retain the power to comment, sternly when necessary, on a lawyer’s performance, I could not agree more. However, allowing an appeal from a public reprimand intended to punish and, in this case, simultaneously accompanied by monetary fines, in no way impinges on a trial judge’s right to criticize or comment on an attorney’s performance. A tidal judge still retains broad, unappealable authority and the whole vocabulary to make pejorative comments or criticisms of a lawyer’s performance without engaging in deliberate or published chastisement.
For example, hard-nosed and even caustic criticism of a lawyer’s behavior, when intended to put a stop to that lawyer’s misconduct, or even when the criticism is intended to control less offensive attorney behavior such as duplicative questioning of a witness or introduction of irrelevant evidence, and not intended as a sanction, are all ordinary efforts at courtroom administration and may not be appealed. See United States v. Donato, 99 F.3d 426, 434 (D.C.Cir.1996); cf. Hook v. McDade, 89 F.3d 350, 355-56 (7th Cir.1996) (judge’s “strong” criticism of criminal defendant’s recusal motion did not show bias), cert. denied sub nom., — U.S.-, 117 S.Ct. 718, 136 L.Ed.2d 637 (1997); Blanche Road Corp. v. Bensalem Twp., 57 F.3d 253, 266-67 (3d Cir.1995) (district court’s calling counsel’s direct examination “worst” it had ever seen not basis for judge’s recusal). Also, a district court’s finding that a witness’s testimony was untruthful or that an expert witness’s opinion cannot be credited may not, on their own, be appealed. Cf. Sun-Tek Indus., 856 F.2d at 176; Bolte, 744 F.2d at 573.
Allowing attorneys to appeal a public reprimand does not limit or chill the trial courts’ broad power to administer justice and control their courtroom. Indeed, criticism and directions to parties are essential tools of a trial judge to control the litigation in the court. None of the hypothetical examples cited above constitutes a sanction or disciplinary action because they are not intended to punish or deter. See National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). Because we cannot foresee every possible circumstance under which tough criticism is appropriate and justified, these are only a few examples of proper and unappealable criticism, and not an exhaustive list. We note that criticism that is not contained in a published opinion will almost never be appealable.
In determining whether a judge’s comments constitutes a sanction, we find helpful the cases dealing with motions to recuse judges based on bias. In Liteky v. United States, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the Supreme Court held that' expressions of impatience, hostility toward counsel, dissatisfaction, annoyance, and anger by judges is not a basis for recusal. Id. at 556, 114 S.Ct. 1147; see also Offutt v. United States, 348 U.S. 11, 17, 75 S.Ct. 11, 99 L.Ed. 11 (1954) (a “modicum of quick temper ... must be allowed even judges”). The Court reasoned that ordinary efforts at courtroom administration, even when ex *99 pressing extreme anger and hostility, must be immune from challenges on this ground if the courts are to perform properly. Id.; see also Blanche Road, 57 F.3d at 266. The same reasoning applies in the context of this case. Hence, a judge’s criticism or unfavorable characterization of a lawyer’s conduct when intended as an “ordinary effort at courtroom administration” is not subject to appeal.
In contrast, a public reprimand of an attorney in a published opinion which is specifically intended to chastise and punish for misconduct stands in a different category. A censure of this sort can be harsh punishment because presumably it will adversely affect a lawyer’s reputation and career and strongly deter future misconduct because of its sharp and public rebuke. In such an instance, there are strong policy consideration for allowing such an appeal.
Under the majority’s view, it is possible for a judge to harshly censure or chastise the lawyer in a published opinion and intend to punish but avoid appellate review. The trial judge can escape appellate review of an unfounded or intemperate censure merely by refraining from labeling the public reprimand as an order or decree.
On the other hand, a policy consideration that strongly favors the appealability of the reprimand is that lawyers are quasi-officers of the court. Many of them appear in court on almost a daily basis. For approximately two centuries, the lawyers of this nation have been the Constitution’s guardians. Notwithstanding the transformation of the legal profession in recent years, lawyers still remain the lifeblood of our legal system. Denying them the right to an appeal in a matter impugning their character, competence or integrity in a trial matter and which publicly and harshly censures them merely because the chastisement is not expressly a “formal reprimand” exalts form over substance. I fear that lawyers will not regard such a technicality as an improvement of the image and quality of justice of our legal system.
Apparently recognizing that lawyers may be without a remedy, the majority suggests that the chastised lawyer may petition for a writ of mandamus to expunge the offensive censure from the record. Mandamus, however, is a slender reed on which to lean for appellate review. It is an extraordinary writ and a court of appeals should not utilize it “when it can exercise the same review by a contemporaneous ordinary appeal.” See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 8 n. 6,103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also 16 Charles Alan Wright et al., Federal Practice and Procedure, § 3935.7, at 644 (2d ed. 1996) (“If almost any form of trial correction is susceptible to correction by appellate writ, courts of appeals remain most reluctant to grant writ review ... .”) The writ of mandamus will not be granted if a direct appeal is available, Roshe v. Evaporated Milk Ass’n, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943), and courts are reluctant to grant it except in most exceptional cases. See 19 Moore’s Federal Practice, § 204.03[1] (Matthew Bender 3d ed.1997). Even the majority in this ease cautions that it must be employed “sparingly.” Maj. op. at 93. Thus, I do not see the writ of mandamus as a satisfactory optional remedy.
IV.
Considering the sanction here as appeal-able, I turn to a question that the majority did not have to consider but which I must in light of my conclusion that the appeal should not be rejected: Does the court have appellate jurisdiction to review the district court’s order when the underlying litigation remains unresolved? Cannon and Blagg contend that we have jurisdiction pursuant to 28 U.S.C. § 158(d) because the district court’s opinion is a final order. I agree.
Section 158(d) permits parties to appeal from “all final decisions, judgments, orders, and decrees” entered by the district court in bankruptcy matters. 28 U.S.C. § 158(d). Generally, an order is “final” in an adversary action in the bankruptcy court only if it “ends the entire adversary proceeding ‘on the merits and leaves nothing for the court to do but enter the judgment.’ ” In re Unanue Casal, 998 F.2d 28, 31 (1st Cir.1993) (quoting Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 375, 107 S.Ct. 1177, 94 *100 L.Ed.2d 389 (1987)); see also In re Harrington, 992 F.2d 3, 6 n. 3 (1st Cir.1993). The district court’s opinion in the instant case only resolved whether the sanctions imposed against Cannon and Blagg were not erroneous. It did not resolve the merits of the underlying litigation; there is no question that the amount and dischargeability of Williams’ federal income tax liability remains undecided.[13] Hence, the order is not final in the traditional sense.
Nonetheless, pursuant to Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and its progeny, appeal of a small class of what are customarily considered non-final orders is permitted. See In re Unanue Casal, 998 F.2d at 31 (Cohen doctrine applies in bankruptcy proceedings). Cohen established “the collateral order doctrine” and permits an appeal when the relevant order (1) involves an issue unrelated to the merits of the case, and which is capable of being reviewed without disrupting the main dispute, (2) constitutes a complete resolution of the issue and is not unfinished or inconclusive, (3) involves a right incapable of vindication on appeal from a final judgment, and (4) involves an important and unsettled question of controlling law. See Appeal of Licht & Semonoff, 796 F.2d 564, 570-71 (1st Cir.1986); see also In re Newport Sav. & Loan Ass’n, 928 F.2d 472, 474 (1st Cir.1991) (citations omitted).
This court has not previously decided the issue presented in this case: whether an order sanctioning an attorney who no longer represents a party in the underlying dispute is immediately appealable. Our decision in Licht and Semonoff, however, offers some guidance. There, this court dismissed an immediate appeal of a sanctions order because the order was not final and did not fit within the collateral order doctrine recognized in Cohen. The court dismissed counsel’s appeal because it did not meet the third element of the Cohen test; counsel would not be prevented from obtaining meaningful review of the sanctions order following termination of the litigation either by entry of final judgment or settlement, because he still continued to represent the plaintiff in the underlying litigation. 796 F.2d at 572. He remained involved in the proceedings and would have an opportunity to appeal the sanctions order following termination of the litigation.
In the instant case, there is no contention that Blagg ever represented the United States in the underlying dispute. Indeed, the bankruptcy court vacated its $750 sanction against him because he never entered an appearance on behalf of the United States. See In re Williams, 188 B.R. at 728-29. Cannon has also terminated his representation of the United States in the underlying matter.
In Licht & Semonoff, the court specifically refused to opine on the question raised by the facts of the instant case. Id. at 572. The court cited several eases which held that immediate appeal of a sanctions order is permitted under the collateral order doctrine when the sanctioned attorney ends his representation of the party in the underlying dispute. See id. (collecting cases). With regard to those cases the court stated: “We express no opinion as to the appealability of sanctions against a nonparty or an attorney no longer litigating the case ... .” 796 F.2d at 572. The cases cited there permit review under the collateral order doctrine because the withdrawing attorney, by virtue of his lack of notice of the progress of the litigation, might lose his right to appeal. He may not be notified of the entry of a final judgment in time to take an appeal. Also, an immediate appeal would not disrupt the progress of the underlying dispute. See, e.g., Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 539 (3d Cir.1985); Westmoreland v. CBS, Inc., 770 F.2d 1168, 1172 (D.C.Cir.1985); see also Licht & Semonoff, 796 F.2d at 572 (collecting cases).[14]
*101 Because Blagg and Cannon do not represent the Government in the underlying litigation, there is a strong likelihood that they will lose their right to obtain review of the orders if it is not done immediately. Neither has a right to be notified of the progress of the underlying litigation or its settlement. Thus, there is a strong likelihood that the litigation will terminate without notice to them, resulting in the loss of their appellate rights. See Eavenson, 775 F.2d at 5B9. Moreover, I discern no impediment to the underlying litigation by allowing this appeal of the sanctions to proceed at this time. Finally, the appeal raises important questions of law. The appeal, therefore, satisfies the Cohen test.
V.
In sum, I would allow the appeal and hold that under the Cohen test the published reprimand is immediately appealable. Thus, I would review the case on the merits.
For the foregoing reasons, I therefore respectfully dissent.

. Rule 37(b)(2) provides in part: "If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just,” including establishing facts against the disobedient party, precluding the disobedient party from introducing certain evidence, striking pleadings, finding the disobedient party in contempt, or ordering the disobedient party to pay the other party's attorney’s fees. Federal Rule of Bankruptcy Procedure 7037 makes this rule applicable in adversary actions.

. Blagg, although employed by the IRS, had not entered an appearance in its behalf or on behalf of any department of the Government. He was merely aiding Cannon in finding the documents that were presumably in the possession of the Internal Revenue Service. Cannon represented the Government in these proceedings, including the IRS.

. The factual findings are found in footnotes 6-8 and in various portions of the text of the opinion. See 181 B.R. at 3-4.

. See Horn, 29 F.3d at 758 n. 1 & 766-67 (citations omitted); see also United States v. Myers, 123 F.3d 350, 356 n. 3 (6th Cir.), cert. denied, - U.S. -, 118 S.Ct. 611, 139 L.Ed.2d 498 (1997); McQueen v. Bullock, 907 F.2d 1544, 1551 n. 20 (5th Cir.1990); United States v. Isgro, 974 F.2d 1091, 1099 (9th Cir.1992); United States v. Prince, 1994 WL 99231 (E.D.N.Y.).

. In Bolte v. Home Ins. Co., 744 F.2d 572 (7th Cir.1984), the court, however, reached a contrary result. It dismissed the appeal because it found that the order characterizing the defense attorneys' conduct was not a final and appealabie order. Accord Clark Equipment Co. v. Lift Parts Mfg. Co., Inc., 972 F.2d 817, 820 (7th Cir.1992) (citation omitted). Cf. Sun-Tek Indus., 856 F.2d at 173, 176.

. Indeed, the district court recognized that the bankruptcy court orders were not final in the traditional sense when it permitted Cannon's and Blagg’s appeals pursuant to 28 U.S.C. § 158(a)(3) which allows appeals of interlocutory orders only with permission. See In re Williams, 215 B.R. at 291.

. Several Circuit Courts of Appeals have adopted this rationale, holding that orders imposing sanctions against an attorney are immediately appealable as collateral orders when the sanctioned attorney no longer represents a party in the underlying dispute. See, e.g., In re Tutu *101 Wells Contamination Litig., 120 F.3d 368, 378-79 (3d Cir.1997); Chaves v. M/V Medina Star, 47 F.3d 153, 155-56 (5th Cir.1995); Westmoreland, 770 F.2d at 1172; Knorr Brake Corp. v. Harhil, Inc., 738 F.2d 223, 226 (7th Cir.1984). But see Howard v. Mail-Well Envelope Co., 90 F.3d 433, 436-37 (10th Cir.1996) (order sanctioning attorney is capable of being reviewed on appeal), cert. denied, — U.S.-, 117 S.Ct. 484, 136 L.Ed.2d 378 (1996).