**UNITED STATES of America, Plaintiff,**

**v.**

**Raymond B. WALKER, Defendant.**

**No. 94–40058–01–SAC.**

United States District Court,
D. Kansas.

May 16, 1995.

---

Marilyn M. Trubey, David J. Phillips, Office of Federal Public Defender, Topeka, KS, for defendant.

Richard L. Hathaway, Office of U.S. Atty., Topeka, KS, for the U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

On November 30, 1994, the grand jury returned a one count indictment against the defendant Raymond B. Walker with possession with intent to distribute 9.8 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1).[1] On February 15, 1995, this court entered a memorandum and order which, *inter alia,* denied Walker's motion to suppress. *See United States v. Walker,* 879 F.Supp. 1087 (D.Kan.1995).

On March 28, 1994, the Topeka Capital-Journal published an article titled **"Official: Gang leaders charged."** In that article, Randy Rathbun, the United States Attorney for the District of Kansas is reported to have said that two leaders of Topeka's two main street gangs are behind bars and were facing prosecution on federal charges. The article indicates that Rathbun identified Raymond B. Walker and Adre C. Rhoiney[2] as gang leaders. These statements and others about Walker and his gang affiliation were apparently made at a news conference.

This case comes before the court upon the following motions filed by Walker:

1. Motion for gag order (Dk. 34).

2. Motion for change of venue (Dk. 35).

The government has filed a response to the defendant's motions (Dk. 37).

On May 12, 1995, the court conducted a hearing on these motions and took the matter under advisement. At the evidentiary

---

1. On March 7, 1995, the grand jury returned a one count superseding indictment charging Walker with possession with the intent to distribute 9.8 grams of cocaine base within 1,000 feet of a public elementary or secondary school in violation of 21 U.S.C. § 860. A motion to dismiss the superseding indictment premised upon the rationale of the Supreme Court's decision in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) is still being briefed by the parties.

2. In *United States v. Rhoiney,* Case No. 95–40019–01–SAC, the defendant filed a motion for gag order and a motion for change of venue, each motion identical to the motions filed by Walker in the case at bar. The motions filed in *Rhoiney* are moot, however, in light of Rhoiney's decision to enter a guilty plea.

hearing, in addition to a copy of the Topeka Capital Journal, the defendant introduced videotapes/transcripts from the news broadcasts of three local television stations: KSNT News, WIBW–TV and KTKA–TV. The defendant also introduced an audit report for the Topeka Capital Journal and the Nielsen ratings from February 1995. The latter two exhibits were introduced to demonstrate the distribution of the newspaper and the likely viewing audience of the television broadcasts, respectively.

Having considered the briefs and arguments of counsel, the evidence presented, and the applicable law, the court is now prepared to rule.

### Motion for Gag Order

In a three-page motion and brief, Walker contends that the statements made by Randy Rathbun on March 27, 1995, indicating that he was the leader of the Topeka Black Gangster Disciples gang jeopardized his ability to obtain a fair trial. Walker requests "an order directing the United States Attorney, his assistants, law enforcement officers, and any other persons associated with the above-referenced case to refrain from making any extrajudicial statements about this case."

The government responds, advancing several arguments in its defense. The government concedes that Rathbun made comments "announcing some of the results of the efforts of the Violent Crime Strike Force." The government's brief then states:

> The article mentions the gang affiliations of two individuals, Rhoiney and Walker, and the fact that Walker is facing cocaine charges. Nowhere in the article does the United States Attorney discuss the evidence in the case, any confessions or otherwise, the character of the defendant or the credibility of any witnesses or evidence.

The prosecution acknowledges its obligations under rules governing their conduct and contend that those rules have not been violated. The government contends that the remarks were "made in response to the community concern about gang activity."

In the event that the court would determine that the comments made by Rathbun were inappropriate, the government contends that the defendant has nevertheless failed to demonstrate that a gag order is appropriate.

The government also argues that because the defendant only points to the lone article in the Topeka Capital–Journal, and because that newspaper is "a paper of limited distribution," it is unlikely that the jury pool from which the defendant's jury will ultimately be selected will be comprised of persons of who have actually read the article. The government notes that under D.Kan. Rule 125, jurors for Topeka are selected from several counties.

The government contends that the publicity has not been excessive and that the court should consider less restrictive alternatives to a gag order. The government suggests that voir dire is an excellent method of screening jurors and is an appropriate alternative to a restraining order. The government also indicates that the jury will be instructed to follow the instructions which they are given and that those instructions will inform the jury that they are to base their decision solely on the evidence admitted at trial.

As a final consideration, the government indicates that while it "does not believe that the comments made by the United States Attorney were improper or violated any District Court rules, we would note that no other presentation or news conferences are scheduled on gang activity in general or on Mr. Walker in particular."

### Analysis

■ The court concludes that the defendant has made an insufficient showing to demonstrate that a gag order is appropriate. Because a gag order is a prior restraint on speech, the requirements to demonstrate that such an order is appropriate are particularly rigorous:

> An order that prohibits the utterance or publication of particular information or commentary imposes a "prior restraint" on speech. A prior restraint on constitutionally protected expression, even one that is intended to protect a defendant's Sixth Amendment right to trial before an impartial jury, normally carries a heavy presumption against its constitutional validity.

*Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 570, 49 L.Ed.2d 683, 96 S.Ct. 2791 [2808] (1976).

Though the speech of an attorney participating in judicial proceedings may be subjected to greater limitations than could constitutionally be imposed on other citizens or on the press, *see Gentile v. State Bar of Nevada,* 115 L.Ed.2d 888 [501 U.S. 1030, 1073], 111 S.Ct. 2720, 2744 (1991), the limitations on attorney speech should be no broader than necessary to protect the integrity of the judicial system and the defendant's right to a fair trial, *see* [501 U.S. at 1059–61, 1074–76] 111 S.Ct. at 2737, 2745 (a prohibition against attorney statements having a " 'substantial likelihood of materially prejudicing an adjudicative proceeding' " is constitutionally permissible, "for it is designed to protect the integrity and fairness of a state's judicial system, and it imposes only narrow and necessary limitations on lawyers' speech"). This Court has stated that before a district court issues a blanket prior restraint, it must, inter alia, "explore whether other available remedies would effectively mitigate the prejudicial publicity," and consider "the effectiveness of the order in question" to ensure an impartial jury. *In re Application of Dow Jones & Co.,* 842 F.2d 603, 611, 612 n. 1 (2d Cir.), *cert. denied,* 488 U.S. 946 [109 S.Ct. 377, 102 L.Ed.2d 365] (1988); *see also In re Application of the New York Times Co.,* 878 F.2d 67, 68 (2d Cir.1989) (per curiam) (vacating district court's "gag" order where there had been no showing, inter alia, that prejudice was likely to result from statements made to the press by counsel).

*United States v. Salameh,* 992 F.2d 445, 446–447 (2nd Cir.1993). Less restrictive alternatives to an injunction against speech include such possibilities as a change of venue, trial postponement, a searching voir dire, emphatic jury instructions, and sequestration of jurors. *See Application of Dow Jones & Co., Inc.,* 842 F.2d at 611.

**3.** During the May 12, 1995, hearing, counsel for the defendant indicated that the defendant re-

In the case at bar, Walker has not demonstrated that a gag order is appropriate or warranted. Each of the parties are bound by rules of this court and there is no reason to believe that the government will engage in any further conduct which might call into question the propriety of its extrajudicial statements regarding this case. In fact, the government indicates that it currently does not intend to make further statements to the press regarding this case. Moreover, the court believes that less restrictive alternatives, namely a probing voir dire and the use of proper jury instructions, will insure a fair trial in light of the limited pretrial publicity identified by the defendant. *See Application of Dow Jones & Co., Inc.,* 842 F.2d at 609 ("Although often appearing unfair in the eyes of the public, pretrial publicity, 'even pervasive, adverse publicity—does not inevitably lead to an unfair trial.' *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 554, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683 (1976). It should not be overlooked that a jury need not consist of persons entirely ignorant of the case they are about to hear; all that the Constitution requires is a jury that is impartial, one that is capable of fairly deciding on the evidence before it whether defendants are innocent or guilty."). The defendant's motion for a gag order is denied.

**Motion for Change of Venue**

In light of the prosecution's statements to the press and their publication in the Topeka Capital Journal, coupled with the television coverage, Walker seeks a change of venue to Kansas City, Kansas, pursuant to Fed. R.Crim.P. 21.[3] In support of his motion, the defendant argues that the following is the federal standard by which prejudice stemming from pretrial publicity is judged: "[T]hat persons who have learned from news sources of a defendant's prior criminal record are presumed to be prejudiced." (*quoting Murphy v. Florida,* 421 U.S. 794, 798, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975) (*citing Marshall v. United States,* 360 U.S. 310,

quested a change of venue to another district or

**958**

79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959)).[4] The government opposes the defendant's motion.

■ Fed.R.Crim.P. 21[5] provides in pertinent part:

(a) For prejudice in the district. The court upon motion of the defendant shall transfer the proceeding as to that defendant to another district whether or not such district is specified in the defendant's motion if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district.

"This rule is intended for cases in which prejudice in the community will make it difficult or impossible to select a fair and impartial jury." *United States v. Gressett,* 773 F.Supp. 270, 277 (D.Kan.1991). "Change of venue in a criminal case is discretionary, and a trial judge's decision on the matter is entitled to deference." *United States v. Hunter,* 672 F.2d 815, 816 (10th Cir.1982). "The facts must compel and not merely support venue transfer before an abuse of discretion will be found by an appellate court." *Id.* See *United States v. Affleck,* 776 F.2d 1451, 1454 (10th Cir.1985) (determination of trial court is entitled to a presumption of correctness and will not be overturned unless there is manifest error).

"The Constitution guarantees the defendant a 'fair trial by a panel of impartial, "indifferent" jurors.'" *United States v. Abello–Silva,* 948 F.2d 1168, 1176 (10th Cir. 1991) (*quoting Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961)), *cert. denied,* —— U.S. ——, 113 S.Ct. 107, 121 L.Ed.2d 65 (1992). "The trial must be held in a tribunal 'free of prejudice, passion, excitement, and tyrannical power.'" *Abello–Silva,* 948 F.2d at 1176 (*quoting Sheppard v. Maxwell,* 384 U.S. 333, 350, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600 (1966)). However, "[a] criminal defendant is not constitutionally entitled to a trial by jurors ignorant about relevant issues and events." *United States v. Lehder–Rivas,* 955 F.2d 1510, 1524 (11th Cir.), *cert. denied sub nom,* —— U.S. ——, 113 S.Ct. 347, 121 L.Ed.2d 262 (1992). "Pre-trial publicity in topical criminal cases is inevitable. The publicity impacts defendant's rights only when it dictates the community's opinion as to guilt or innocence." *Abello–Silva,* 948 F.2d at 1176. "The relevant question is not whether the community remembered the case, but whether the jurors ... had such fixed opinions that they could not judge impartially the

---

in the alternative an intradistrict transfer to Kansas City, Kansas.

**4.** The court notes that in *Marshall, during the trial, see* 360 U.S. at 311, 79 S.Ct. at 1172, jurors were exposed to newspaper articles which contained information about the defendant's previous felony convictions excluded by the trial court as irrelevant.

**5.** Because Kansas is comprised of one judicial district, *see* 28 U.S.C. § 96 (Kansas constitutes one judicial district), Fed.R.Crim.P. 21(a) would appear on its face to be inapplicable to the defendant's motion. In fact, Fed.R.Crim.P. 18 would appear to govern the disposition of the defendant's intradistrict change of venue request:

Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

However, the court believes the general principles found in Rule 21 and the case law interpreting that Rule are helpful in evaluating the defendant's motion in this case to the extent that he seeks a transfer to Kansas City, Kansas. This belief is confirmed in part by the Notes of the Advisory Committee accompanying Rule 18.

The amendment eliminates the requirement that the prosecution shall be in a division in which the offense was committed and vests discretion in the court to fix the place of trial at any place within the district with due regard to the convenience of the defendant and his witnesses.

. . . . .

If the court is satisfied that there exists in the place fixed for trial prejudice against the defendant so great as to render the trial unfair, the court may, of course, fix another place of trial within the district (if there be such) where such prejudice does not exist. Cf. Rule 21 dealing with transfers between districts.

Fed.R.Crim.P. 18, *Notes of Advisory Committee on Rules,* 1966 Amendment. *See In re Ford,* 987 F.2d 334, 341–342 (6th Cir.) (district court has authority to order an intradistrict transfer), *cert. denied,* —— U.S. ——, 113 S.Ct. 180, 121 L.Ed.2d 126 (1992); *see generally* 2 Charles A. Wright, *Federal Practice and Procedure* § 305 (1982).

guilt of the defendant.' " *Lehder–Rivas*, 955 F.2d at 1524 (*quoting Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984)).

"There are two ways in which pretrial publicity can give rise to a due process violation: (1) where prejudice is presumed because the publicity was 'sufficiently prejudicial and inflammatory and [it] ... saturated the community where the trial was held, *Cummings v. Dugger*, 862 F.2d 1504, 1511 (11th Cir.), *cert. denied*, 490 U.S. 1111, [109 S.Ct. 3169, 104 L.Ed.2d 1031] (1989), or [ (2) ] where the defendant establishes actual prejudice resulting from the publicity." *United States v. Awan*, 966 F.2d 1415, 1427 (11th Cir.1992) (citation omitted).

■ The defendant bears the burden of establishing the presumption of prejudice. *Abello–Silva*, 948 F.2d at 1176; *see* 2 *Federal Practice and Procedure* § 342 at 248 ("The burden is on the defendant to show a reasonable likelihood of prejudice."). "[P]resumed prejudice is rarely invoked and only in extreme situations." *Abello–Silva*, 948 F.2d at 1177. "[U]nfavorable publicity does not of itself raise a presumption of prejudice." *United States v. Jackson*, 482 F.2d 1167, 1177 (10th Cir.1973), *cert. denied*, 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974). "The prejudice must have manifested itself so as to corrupt due process." *Dennis v. United States*, 302 F.2d 5, 8 (10th Cir.1962), *rev'd on other grounds*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

In determining the existence of presumptive prejudice, a court must consider the totality of the circumstances, including the type of pretrial publicity, the time lapse between peak publicity and the trial, and the credibility of prospective jurors who indicate during voir dire that they could be impartial despite having been exposed to pretrial publicity about the case.

*Lehder–Rivas*, 955 F.2d at 1524; *see Gressett*, 773 F.Supp. at 277 (*citing United States v. Maldonado–Rivera*, 922 F.2d 934, 967 (2d Cir.1990)).[6]

■ The court denies the defendant's motion for a change of venue. The court finds that the defendant has failed to present sufficient evidence to establish a presumption of prejudice. Specifically, the court finds that the defendant has not demonstrated that the information disseminated to the public was of such a nature and so pervasively distributed that he cannot obtain a fair and impartial jury trial in Topeka. Although the media apparently reported the filing of this case and the statements made by the United States Attorney for the District of Kansas concerning the defendant, the coverage was limited to one occasion and therefore it is highly doubtful that such information would preclude the selection of a fair jury from the surrounding community. *See Lehder–Rivas*, 955 F.2d at 1524–1525; *Awan*, 966 F.2d at 1427–1428; *Abello–Silva*, 948 F.2d at 1176–1177. Nor was the limited information that was disseminated likely to ensconce the community's attitudes into one of uniform hostility toward the defendant. *See Affleck*, 776 F.2d at 1455 (defendant fails to establish "the existence of an irrepressibly hostile community attitude.").

Moreover, the court is unconvinced that a probing voir dire inquiry and proper instructions to the jury will not adequately address the defendant's concerns. Any claims of actual prejudice would merely be speculative at this point in time and will be adequately addressed during voir dire.

---

**6.** In *Gressett*, Judge Rogers, after considering many of the same factors listed in *Lehder–Rivas*, denied the defendant's motion for change of venue:

The defendant's presentation on this issue is inadequate. The defendant has not sufficiently demonstrated that the pretrial publicity has been so prejudicial as to prevent the defendant from obtaining a fair and impartial trial. The defendants may renew this motion at trial if they find it necessary. The courts, including the Tenth Circuit, have recognized that the existence of prejudice can better be determined by voir dire examination of potential jurors than by affidavits and speculation about the effect of publicity. *See, e.g., United States v. Lamb*, 575 F.2d 1310, 1315 (10th Cir.1978), *cert. denied*, 439 U.S. 854 [99 S.Ct. 165, 58 L.Ed.2d 160] (1978). At this time, this motion shall be denied.

773 F.Supp. at 277.

In short, the defendant has failed to demonstrate that a change of venue is appropriate. This motion is denied.

IT IS THEREFORE ORDERED that Walker's Motion for gag order (Dk. 34) is denied.

IT IS FURTHER ORDERED that Walker's Motion for change of venue (Dk. 35) is denied.