**William I. KOCH, et al., Plaintiffs,**

v.

**KOCH INDUSTRIES, INC.,
et al., Defendants.**

**No. 85–1636–SAC.**

United States District Court,
D. Kansas.

March 23, 1998.

Clarifying Order March 24, 1998.

Clifford L. Malone, Adams, Jones, Robinson & Malone, Wichita, KS, Thomas E. Wright, Wright, Henson, Somers, Sebelius, Clark & Baker, L.L.P., Topeka, KS, Harry L. Najim, Najim Law Offices, Wichita, KS, John T. Hickey, Jr., Alex Dimitrief, Kirkland & Ellis, Chicago, IL, Joseph F. Ryan, Lyne, Woodworth & Evarts, Boston, MA, Fred H. Bartlit, Jr., Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, Donald E. Scott, Ellen A. Cirangle, Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO, Gregory S. C.

Huffman, L. James Berglund, II, Thompson & Knight, Dallas, TX, Russell E. Brooks, Milbank, Tweed, Hadley & McCloy, New York, NY, Stephen M. Joseph, Redmond & Nazar, L.L.P., Wichita, KS, Michael Paul Kirschner, Lee & Kirschner, P.L.L.C., Oklahoma City, OK, for William I. Koch, Oxbow Energy Inc., L. B. Simmons Energy Inc. dba Rocket Oil Company, United States Trust Company of New York, as Trustee, Spring Creek Art Foundation Inc., Gay A. Roane, Ann Alspaugh, Marjorie Simmons Gray, as Trustee, Northern Trust Company, as Trustee, Marjorie L. Simmons, as Trustee, Louis Howard Andres Cox, Paul Anthony Andres Cox, Holly A. Andres Cox Farabee, Frederick R. Koch, Nationsbank N.A., co-trustee of the Louis Howard Andres Cox Trusts B & D, plaintiffs.

James M. Armstrong, Robert L. Howard, Timothy B. Mustaine, Foulston & Siefkin L.L.P., Donald L. Cordes, Koch Industries, Inc., Wichita, KS, for Koch Industries Inc., Charles G. Koch, Sterling V. Varner, David H. Koch, Donald L. Cordes, Thomas M. Carey, defendants.

Michael W. Merriam, Gehrt & Roberts, Chartered, Daniel R. Lykins, Bryan, Lykins & Hejtmanek, P.A., Topeka, KS, for Kansas Press Association, Kansas Association of Broadcasters, Wichita Eagle–Beacon, Topeka Capital–Journal, WIBW–TV, Kansas City Star Company, The, Wichita Business Journal, Harris Enterprises, Inc., Koch Crime Comm, movants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case has been on file since 1985. Trial is set to commence on April 6, 1998. Among the deluge of the other complicated matters which the court must resolve in the few remaining days before trial comes the plaintiffs' "Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt and for Order Prohibiting ExtraJudicial Statements to the News Media" (Dk.

715). The plaintiffs' motion essentially has two components. First, the plaintiffs suggest that the defendants have improperly sponsored a telephone survey of Topeka residents "concerning their attitudes toward Koch Industries and Bill and Charles Koch." The plaintiffs contend that if the defendants have engaged in such polling, that conduct is in direct contravention of the order of the court announced at the February 9, 1998, status conference. Second, the plaintiffs seek an order addressing a broader concern regarding pretrial publicity, arguing that "the defendants are taking action to generate extensive prejudicial publicity in Topeka immediately prior to and during the trial." The plaintiffs "move for an order pursuant to D. Kan. Rule 83.2.3[1] prohibiting any of the parties, attorneys and witnesses in this case from making any extrajudicial statements to the press or from otherwise using their influence to encourage the generation of prejudicial publicity prior to or during the trial."

Attached to the plaintiffs' motion are several exhibits, including a videotape copy of a three part interview of Charles Koch, conducted and aired by KAKE TV, the Wichita, Kansas, ABC affiliate. The interview was apparently broadcast in Wichita on March 4–6, 1998. In the third installment of the interview, Charles Koch specifically discusses this lawsuit and his perception of true motives of his brother, William Koch, for initiating this and other lawsuits. In that same installment, William Koch was also interviewed by KAKE TV. During the interview, William Koch elaborates on his motives for bringing this lawsuit—eschewing any notion that this lawsuit is brought for anything but purely business reasons.

The defendants respond to the plaintiffs' motion, arguing that they did not violate the court's February 9, 1998, order. The defendants acknowledge that Koch Industries hired an outside survey firm to conduct public opinion polling. The defendants state,

---

1. D. Kan. Rule 83.2.3, formerly D. Kan. Rule 118, titled "SPECIAL ORDERS IN SENSATIONAL CASES" provides:

In a widely-publicized or sensational criminal or civil case the court, on motion of any party or on its own motion, may enter a special order governing such matters as extrajudicial statements by attorneys, parties or witnesses; the seating and conduct of spectators and news media representatives; the management and sequestration of jurors and witnesses; and other matters which the court finds necessary to insure a fair trial.

however, that the survey was performed only to gather current data for purposes of honing its advertising strategy for its burgeoning business in agriculture related products. Counsel for the defendants was aware of the intended survey, but believed that "no survey or poll would be conducted in the 17–county jury pool area, and that none of the 100+ people who completed questionnaires would be contacted regardless of residence." According to the defendants, "[a]pparently, due to mis-communication, the outside survey firm did not understand that I had intended that no one at all in the 17–county area would be contacted." Additional precautions were taken to ensure that no member of the prospective juror pool were contacted, and apparently none were. In addition, the survey questions did not expressly refer to this lawsuit.

In regard to the plaintiffs' request for an order controlling pretrial publicity, the defendants wholeheartedly agree that "the court should enter an order, pursuant to 83.2.3 and (sic) applicable to all parties and their representatives (including the Koch Crime Commission), that precludes any further extra judicial statements to the media about this case or any disparaging comments about the parties or witnesses, or advertising in the Topeka area by either side (including the Koch Crime Commission), until the conclusion of the trial of this case." The defendants suggest that William Koch's sponsorship of the Koch Crime Commission is nothing more than thinly veiled campaign to enhance his image in the minds of prospective jurors. The defendants go on to suggest that their contacts with the media are simply a measured response to comments made by the plaintiffs.

In their two "supplemental" briefs, the plaintiffs add additional information buttressing their belief that the defendants intend to inundate the local television media with advertisements "glorifying Koch Industries and Charles Koch" in a new "Image Campaign." The plaintiffs also argue that the defendants' prejudicial, besmirching comments about William Koch and this lawsuit compel them to respond to inquiries from the news media.

## Legal Standards: Pretrial Publicity in Civil Cases

The jury's objective in all cases is to search for the truth. *See Sims v. ANR Freight System, Inc.,* 77 F.3d 846, 849 (5th Cir.1996) ("A trial is a proceeding designed to be a search for the truth."). Outside influences potentially impair the jury's ability to search for the truth. *See Patterson v. Colorado,* 205 U.S. 454, 462, 27 S.Ct. 556, 51 L.Ed. 879 (1907) ("The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."); *United States v. Weisman,* 736 F.2d 421, 424 (7th Cir.1984) ("It is a fundamental principle of our jurisprudence 'the jury's verdict must be based on evidence received in open court, and not from outside sources.'") (quoting *Sheppard v. Maxwell,* 384 U.S. 333, 351, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)), *cert. denied,* 469 U.S. 983, 105 S.Ct. 390, 83 L.Ed.2d 324 (1984). Pretrial publicity is an outside influence that may adversely affect the fairness of jury process.

Problems caused by prejudicial pretrial publicity typically arise in the criminal context. Sensational or controversial criminal trials are generally more likely to capture the fascination of the public and the press. Numerous cases attempt to reconcile the tension between a criminal defendant's Sixth Amendment right to trial before an impartial jury and other person's First Amendment right to free speech. *See, e.g., United States v. Walker,* 890 F.Supp. 954 (D.Kan.1995). "The Supreme Court has recognized that conflict between freedom of speech and the right to a fair trial is no less troubling in the non-criminal context." *Bailey v. Systems Innovation, Inc.,* 852 F.2d 93, 97 (3rd Cir.1988). This is so because "'[t]here is a constitutional right to a fair trial in a civil case.'" *Latiolais v. Whitley,* 93 F.3d 205, 207 (5th Cir.1996) (quoting *Lemons v. Skidmore,* 985 F.2d 354, 357 (7th Cir.1993)). Nevertheless, "[s]ome courts have employed a hierarchical type of analysis, suggesting that criminal trials are subject to greater fair trial concerns than civil trials." *Bailey,* 852 F.2d at 98. "The Su-

preme Court, however, has declined to assign a priority between first amendment and sixth amendment rights." *Id.* (citing *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 561, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)). "Similarly, first amendment analysis does not vary in response to the competing seventh amendment purpose." *Id.*

An order that prohibits the utterance or publication of particular information or commentary imposes a "prior restraint" on speech. A prior restraint on constitutionally protected expression, even one that is intended to protect a defendant's Sixth Amendment right to trial before an impartial jury, normally carries a heavy presumption against its constitutional validity. *United States v. Salameh,* 992 F.2d 445, 446–47 (2nd Cir.1993). As in any case involving pretrial publicity, the court must decide whether "the gravity of the 'evil,' discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger." *Nebraska Press Ass'n,* 427 U.S. at 562, 96 S.Ct. 2791, (quoting *United States v. Dennis,* 183 F.2d 201, 212 (2d Cir.1950) (Hand, L., J.), *aff'd,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951)). In determining whether an order restraining speech is appropriate, the court must evaluate

(a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger. The precise terms of the restraining order are also important. We must then consider whether the record supports the entry of a prior restraint on publication [or speech], one of the most extraordinary remedies known to our jurisprudence.

*Id.* "The limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974). "Less restrictive alternatives to an injunction against speech include such possibilities as a change of venue, trial postponement, a searching voir dire, emphatic jury instructions, and sequestration of jurors." *Walker,* 890 F.Supp. at 957.

The determination of what prior restraint, if any, is necessary to protect the integrity of the judicial process, is committed to the discretion of the district court. *See United States v. Wiesner,* 789 F.2d 1264, 1268 (7th Cir.1986) ("The management of juries traditionally lies within the sound discretion of the trial judge.").

"In considering the effect of … extra-judicial material on the jury the District Court has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial." *United States v. Van Dyke,* 605 F.2d 220, 229 (6th Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979). The Supreme Court has

stressed the wide discretion granted to the trial court in conducting voir dire in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias. Particularly with respect to pretrial publicity, we think this primary reliance on the judgment of the trial court makes good sense. The judge of that court sits in the locale where the publicity is said to have had its effect, and brings to his evaluation of any such claim his own perception of the depth and extent of news stories that might influence a juror.

*Mu'Min v. Virginia,* 500 U.S. 415, 427, 111 S.Ct. 1899, 1906, 114 L.Ed.2d 493 (1991).

*United States v. Lanier,* 33 F.3d 639, 657 (6th Cir.1994), *vacated on other grounds,* 43 F.3d 1033 (6th Cir.1995), *rehearing en banc,* 73 F.3d 1380 (6th Cir.1996), *vacated on other grounds,* 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

### Order to Show Cause

Based upon its review of the materials submitted and the representations of defendants' counsel, the court denies the plaintiffs' request for an order be issued to the defendants to show cause why they should not be held in contempt. The court doubts that either party would intentionally flout its authority and express directions regarding juror polling. For now, the court accepts the defendants proffer and accepts the defendants' explanation that any polling of persons

in the 17 counties from which jurors are drawn for the Topeka Division was not an intentional act taken in direct contravention of this court's order. Moreover, based upon the defendants' proffer, no harm or prejudice to the prospective juror pool has actually occurred.[2]

Under no circumstance should this or any similar problem regarding polling of potential jurors arise again in this case. As the parties well know, the court has gone to great lengths to collect the prospective jurors in this case.[3] To obviate the need to reexamine this issue in the future and to insure that no prospective juror, or for that matter any juror's family, friend or acquaintance, is contacted in regard to this case, the court enters the following order:

> **No party, or their agent or representative, shall, for *any* purpose, contact or poll any person listed as a prospective juror in this case. Nor shall any party, or their agent or representative, conduct any poll of any person in the seventeen counties from which the Topeka Division is drawn, *see* D. Kan. Rule 38.1, in regard to their knowledge or opinion of any person or entity connected with this case or with regard to any issue relating to this case.**

Any person or violating this order will be ordered to show cause why they should not be held in contempt.

### Pretrial Extrajudicial Statements By Parties, Counsel and Prospective Witnesses

Reviewing the recriminations contained within the parties' briefs, the court almost forgets that this complex litigation involves claims for hundreds of millions of dollars and that each side is represented by experienced counsel. Unfortunately, the court is instead reminded of a childhood tussle on the school playground—followed by the inevitable volley of finger pointing accompanied by a chorus of participants shouting the defensive retort of "He started it" as the teacher approaches to break up the fray. In a case awash with extremely complicated pretrial matters, the court must unfortunately divert its attention to matters that could clearly have been resolved by the parties without the intervention of the court.

All parties apparently agree that court should enter an order precluding all parties, counsel and witnesses from making extrajudicial statements to the press in an effort to garner favor for their side. The court agrees. Having guided this case over the past thirteen years, the court believes that this is an extraordinary case requiring restraint of the parties' extrajudicial statements and that this restraint is necessary to insure a fair trial. The court doubts that a probing inquiry of the jury would be an adequate alternative in this case. The court is aware of the general public interest in this case and the media attention concomitant with that interest. This latest flurry of extrajudicial information imparted by the parties and their representatives so close in time to the outset of trial simply demonstrates the compelling need for prior restraint of speech. The failure to act now substantially increases the likelihood of unfair prejudice.

Under the authority granted by D. Kan. Rule 83.2.3, all parties, counsel and witnesses are precluded from making extrajudicial statements to the news media regarding this case until further order of this court.

### Advertisements by the Parties or By Entities Controlled or Operated by the Parties

Although all of the parties apparently agree that court should enter an order precluding all parties, counsel and witnesses from making extrajudicial statements to the

---

2. In the unhappy and unlikely event that one or more members of the prospective jury pool have been contacted by the defendants' survey team, the court will determine what sanction, if any, is appropriate.

3. After considering the suggestions of the parties, questionnaires drafted by the court were sent to prospective jurors drawn at random from the qualified wheel. One hundred and twenty seven completed questionnaires were returned to the court. The parties mutually agreed to dismiss twenty-nine jurors for cause. Additional jurors were dismissed by the court for cause. The remaining sixty persons comprising the jury venire were randomly selected by the computer. On March 19, 1998, the court supplied counsel for the parties with a copy of the list of the sixty prospective jurors that will be called in this case.

news media, the issue of pretrial publicity is not totally resolved. The plaintiffs also ask the court to enter an order prohibiting the defendants from advertising in the Topeka area. The defendants apparently agree that the court should preclude both sides (including the Koch Crime Commission)[4] from advertising in the Topeka area.

### Analysis

Although precluding the parties, counsel and witnesses from making extrajudicial statements to the news media would typically be sufficient to shield potential jurors from potentially prejudicial pretrial publicity, very little about this case is typical. In most cases, parties lack the financial resources to spend hundreds of thousands or millions of dollars to repeatedly showcase their most redeeming qualities to hundreds of thousands of prospective jurors. Although atypical in its size and complexity, one thing about this case remains the same as any other: The issues of fact will be decided by jurors based upon their evaluation of the evidence admitted at trial. This case is not a popularity contest. *See Sheppard,* 384 U.S. at 350, 86 S.Ct. 1507 ("But the Court has also pointed out that '(l)egal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper.'") (quoting *Bridges v. State of California,* 314 U.S. 252, 271, 62 S.Ct. 190, 86 L.Ed. 192 (1941)). Advertisements published or to be published by the parties in this case, whether selling products or ostensibly serving the public interest, seemingly carry messages directed at swaying public sentiment to that party's side in this case. In short, this case will tried in the courthouse; any attempt to try this matter in the media ends now.

In reaching this decision, the court has considered less restrictive means of preventing unfair prejudice attributable to pretrial publicity. Unfortunately, the court can devise no content-based restriction that will be fairly and equally applied to the parties. In light of the parties' respective requests for restraint, a total ban on advertising is not only simple and expedient, but seems most

equitable. Under the unusual circumstances of this case, the court enters the following order to insure a fair trial in this matter:

> **No party, or any business, association, entity or commission controlled by a party (including the Koch Crime Commission), shall place any advertisement or commercial which is directly related to or connected with any party, or any business, association, entity or commission controlled by a party, in any medium, including the newspaper, radio or television (including Kansas City or Wichita channels available through cable) which is reasonably likely to reach persons residing in the 17 counties comprising the Topeka Division.**

This ban on advertising by any party, or any business, association, entity or commission controlled by a party, takes effect at the time this memorandum and order is filed.

The court will, of course, consider objections to this aspect of this order. However, prior to filing any objection to this aspect of this order, the party seeking relief from this order must file a statement of consultation indicating that they have contacted the opposing side and attempted to obtain their opponent's consent to publish a particular advertisement. If both sides agree that an advertisement may be published, the party seeking to publish the advertisement must still obtain approval from this court prior to publication.

### Admonition to the Jury

Although the prophylactic measures set forth above greatly reduce the chance of unfair pretrial publicity, these orders only affect the parties, their representatives (or any business, association, entity or commission controlled by a party), counsel and the witnesses. The court's order, by its terms, does not in any way control persons other than those identified. Nor does this order deny the public or the news media access to the trial of this matter.[5] To minimize the possibility of any exposure to potentially prejudicial material, the court will provide in

---

4. According to the defendants' "Affidavit and Response" "[i]t is obvious that the Koch Crime Commission is controlled by William Koch."

5. The court would, hope, however, that the news media would use reasonable self-restraint in reporting any events connected with the trial.

writing the following admonition to each prospective juror in this case:

As you know from the jury questionnaires that you completed, the name of the case in which you may serve as a juror is William I. Koch, et al. v. Koch Industries, Inc., et al., Case No. 85–1636–SAC. It is possible that newspaper and magazine articles, or radio and television broadcasts, may contain information about the parties or issues in this case. If chosen as a juror in this case, it will be your sworn obligation to base your decision solely on the evidence admitted at trial. Anything you may see or hear outside the courtroom is not evidence, and must be entirely disregarded. As a prospective juror, I instruct you that from this point in time, and through and including the time you are released from service, you shall make every effort to avoid reading any written materials, such as newspaper or magazine articles, and to avoid listening to any radio programs, or to avoid listening or viewing any television programs which may relate to this case. Under no circumstance should you undertake your own investigation of the facts of this case. I further instruct you to avoid any discussions or debates about this case with anyone until I release you from jury service.

This admonition will be sent with the notice instructing jurors to report on April 6, 1998.

IT IS THEREFORE ORDERED that the plaintiff's "Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt and for Order Prohibiting ExtraJudicial Statements to the News Media" (Dk.715) is denied in part and granted in part as set forth in the body of this opinion. This memorandum and order takes effect upon its filing.

### MEMORANDUM AND ORDER

Yesterday, on March 23, 1998, the court entered a memorandum and order (Dk.720) which contained the following directive:

No party, or any business, association, entity or commission controlled by a party (including the Koch Crime Commission), shall place any advertisement or commercial which is directly related to or connected with any party, or any business, association, entity or commission controlled by a party, in any medium, including the newspaper, radio or television (including Kansas City or Wichita channels available through cable) which is reasonably likely to reach persons residing in the 17 counties comprising the Topeka Division.

Although the court has not received any objections to its March 23, 1998, memorandum and order, one aspect of this order should be clarified in regard to Nationsbank, N.A. Nationsbank, N.A. acts as trustee for the Louis Howard Andres Cox Trust B & D (the "Cox Trusts") and therefore is technically listed as a party in this case. Given Nationsbank's role as trustee in this case, the prohibition on advertising set forth above does not preclude Nationsbank from placing advertisements unrelated to this case in any medium which would be likely to reach persons residing in the seventeen counties comprising the Topeka Division. The prohibition on advertising set forth above does apply, however, to the Cox Trusts and their beneficiary.

IT IS SO ORDERED.